Hear ye, hear ye. This Honorable Appellate Court for the 2nd District is now open. The Honorable Justice Donald C. Hudson presiding, along with Justice George Bridges and Justice Liam C. Brennan. The case is No. 219-1075, Parkford Fire Insurance Company, Plaintiff-Appellee v. Serenity LED, Inc., et al., Defendants' Appellants. Arguing for the Appellants, Timothy P. Donohue. Arguing for the Appellee, David B. Miller. Good morning, Justices. My name is Timothy P. Donohue. I represent the Appellants, as Mr. Kaplan said, Christopher Sass and Serenity. May it please the Court, this case comes before you on our appeal of an entry of summary judgment on a declaratory petition regarding the workers' compensation case. Simply put, there are general issues of material fact in this case. First and foremost, Mr. Sass was actually in the course of his employment as a salesperson for Serenity LED when he suffered an injury at Bill K. Ford in December of 2016. There really wasn't any open testimony in this hearing. It was just the pleadings, some discovery responses, and four affidavits in support of the motion and in opposition to the motion. Two from the Plaintiff and two from the Defendants. Importantly, in all of that, there wasn't any testimony regarding Hartford saying this was fraud, this was deceit. What we have at most is Mr. Sass was injured on December 23rd and around January 23rd, I believe, or 17th. We were concerned about getting an estimate to expand the coverage and there was an email sent to Zachary Wong. Mr. Wong passed it along to a Mr. Hassler who responded to Flanders and said we weren't aware of this installation when the application was made. Can you verify some information? Subsequently, those answers were provided to Hartford in, I believe, March of 2017. In August of 2017 or 2018, I can't remember the year, they canceled the policy. It was 17. They canceled the policy basically in contravention and the reason contradicted the answers that were given by Serenity. Really, the three items issues as I see it is that Hartford was never at risk for any installation work by Serenity. I say that because A, on page 862 of the record, the first page of the insurance application slash binder says that no subcontractors will be covered under this schedule and that's to be scheduled under another scheduling number in the Hartford system. Second, the answers that Serenity slash SAS provided to Hartford demonstrated unequivocally that any installation work was to be done by subcontractors, which by the terms of the application binder starting in 862, exclude any work by subcontractors from coverage. Secondly, the appellees present the argument that workers' comp coverage is coextensive, it's unitary, and I can't bifurcate out the injury to Mr. SAS from the fact that the court found there were fraudulent misrepresentations as to the coverage to get the coverage. But the actual section that the appellees cite in their brief provides, I think it's 720-820-ILCS-3051 provides for an exclusion where the employer uses subcontractors and the subcontractors would have to provide their own insurance, which would diminish the entire liability of my clients because it would just be the employees that were listed in the workers' comp case. And third, the doctrine of known loss would exclude any installation work from coverage because, as I'm sure you'll hear, and it's in the record, my client signed a contract to install lights with Bill K. Ford prior to getting the insurance policy. So they always intended to install, but I don't think that rises to a fraudulent misrepresentation or intent to deceive. It merely means that any installation work wasn't going to be covered because it was no longer a contingent risk under the known loss doctrine, and therefore it relieved Hartford from the duty to ensure that risk, but not the duty to ensure the slip and fall that Mr. SAS suffered while he was in the course of his employment. So I believe that we have a situation where Mr. SAS was in the course of his employment on a sales call when he slipped and fell and suffered the injury. And you have an expansion, a request for a quote to expand, which then recreates a long dialogue in the record about verifying certain information. And this was done in March. The workers' comp case was filed in April. Temporary benefits were paid, I believe, for a while. Then they were pulled. Then the insurance policy was canceled. Then an audit letter went out after it was canceled. Then the plaintiffs filed the rescission claim. And then under Section 154, to sum up and finish, in the insurance code, it says that no policy will be avoided based on a misrepresentation or a false warranty unless it's made with actual intent to deceive and then the disjunctive or it materially affects the risk. Well, there's a question of law as to what actual intent to deceive is. And Judge Hoffman didn't get to the question of fact of materially affecting it. And in essence, creates an exception that, in my view, swallows that section whole because it presents the possibility, the very real possibility, that every time that a situation comes up where an insurance carrier sues to get a determination on coverage, the trial court can say, well, as a matter of law, I find that this is actual intent to deceive. Never get to the question of fact of materiality affecting the risk. And we could be presented with a situation where it could be a win 100% of the time for the insurance companies on motion for summary judgment in these type of matters. And I don't think that was the legislature's intent. So in sum, I don't think my position is that Hartford was never at risk for any coverage for the installation work. And there's been no claim for installation work. It's important to remember that the claim here was for a slip and fall at ground level. There was never any claim for an installation injury. So I would be asking the court to reverse and remand this back to the trial court to have a trial on the merits on the matter or in the alternative to reverse outright. Thank you. Thank you, Mr. Donahue. Justice Bridges, do you have any questions of Mr. Donahue? I do. Thank you, Justice. Mr. Donahue, when Mr. Assas applied for workers' comp coverage from Hartford, he was actively at that time seeking contracts for the installation and repair of LED lights, right? Yes, he was, Justice. Let me admit that. And yet he never advised Hartford of that, correct? I believe that's correct, yes. I'm not aware that he did. And also, wasn't he currently under contract to install LED lights when he applied for the workers' comp policy? Yes, I believe that's correct, with Bill Kay, yes. And so my question is, Section 154 of the Insurance Code provides that a contract may be voided on the basis of a misrepresentation that is either intentional or material. You agree that Serenity denied it was engaged in any installation service of a repair when it applied for the coverage? I don't think I denied it. I think we admitted it. No, I'm asking you. So do you admit then that they, in fact, were engaged when they applied for the coverage? I believe they had the contract, but I don't believe they actually started the installation. If that answers your question. Well, I thought the manager indicated that they, in fact, were in the process of making installation and repairs. That I don't remember. And I don't want to misrepresent anything to the court. It would be in our answer. Okay, well. We admitted that we contracted and we weren't doing installations. Well, okay. So I'm confused. The record makes, it seems to me the record makes it clear, and on page 10 of your brief, that Serenity was engaged in contracting to install LED lights before they sought the policy before us. Can you tell us why then on January 23rd of 2017, why Serenity sought to expand the coverage to include coverage for installation services since they were already installing LED lights? I don't honestly know, Mr. Justice, but I would assume our position was that they thought they would go prospectively, not retroactively. Okay. Very well. Thank you, Mr. Donahue. Thank you, Justice Hudson. I have no further questions. Justice Brennan, do you have any questions of Mr. Donahue? I do not at this time. Thank you. All right. Mr. Donahue, I think the gist of your argument was that this issue in this case is about whether the defendant is entitled to coverage under the comp law or under the plaintiff's worker's comp policy. But isn't the issue, Hartford sued for rescission, so isn't the question whether they are entitled to rescind the policy such that it was not effective at the time of Mr. Sass's accident on the basis of alleged misrepresentations? Isn't that really the issue here, whether they're entitled to rescission? Yes. Yes, I'll admit that it is whether they're entitled to rescission. And picking up on the question asked by Justice Bridges, this is not even, I mean, to me it's fairly clear. The application asked Serenity, Mr. Sass, on behalf of Serenity, was filling out or responding to the application. The question was asked, is any installation service and or repair work performed by the employees or subcontractors? And he clearly said no. Would you acknowledge that? Yes, I did acknowledge that, and I believe we admitted that, Judge. And previously to that, and I believe Mr. Bill Kaye, who was the manager of the car lot, had stated that at that time, before the accident, in the month before the accident, Serenity had entered into a contract for installation, correct? Correct. So how is that not a misrepresentation made to the insurance company on the nature of Serenity's business? Well, I believe it is a misrepresentation, but I don't believe there's actual intent to deceive, and there's no material effect to the risk. Well, if you tell, if you represent to an insurance company, you're in the process of merely supplying lights, and you're not doing any installation work where somebody could fall or get hurt, how can that not be a material misrepresentation? Well, I don't think the standard is a material misrepresentation. I think it's a misrepresentation made with actual intent to deceive the insurance carrier. Why wouldn't that qualify if you tell somebody that you don't do any installation, and yet you have a contract for installation with another business? Why wouldn't there be intent to deceive there? Because it's simply not something that would be covered. If we say that, no, we don't do it, and then after the fact, we're doing it, it's just, it's not covered, and they're never under any jeopardy to have to cover it. Well, then why did SAS make a claim? If they're not, if they don't have to cover it, why did you go to them and ask for coverage, or ask to be counted? If I could speak to that, he went to make a claim for a slip and fall while he was on the course of his employment as a salesperson, not installing lights. It's not a claim for an injury for installation. It's a slip and fall during the course of his employment on a sales call. Okay, we understand your position. All right, thank you. Thank you. All right, at this time, Mr. Mueller, we turn to you on behalf of the appellee. Can you hear me? I can. Everybody else hear him? Yes. Okay, may it please? Yes, I can hear you. I am David Miller, spelled the hard way, M-U-E-L-L-E-R, and I represent the appellee and plaintiff Hartford Insurance Group. I believe that the last line of questions covered the waterfront, so to speak, regarding the nature of our rescission claims and the reason why the trial judge rescinded the policy. I would point out a couple of factors very quickly. First of all, as far as actual intent, number one under section 154, we clearly have a misrepresentation. Everybody acknowledges that. My learned opponent agrees. The rule of law is that the court may find an applicant's statements intentionally false as a matter of law where they are clearly contradicted by his actual knowledge. Here, we have the interesting phenomenon that the defendant, Christopher Sass, owned Serenity LED, was also the applicant who applied for the policy and who it turns out is also the claimant seeking workers' compensation benefits. It has been admitted that there were clear-cut misrepresentations made by Sass and therefore made by Serenity of facts and circumstances relating to the business of Serenity, which were contradicted by the actual knowledge of Sass at the time he made those misrepresentations. As the trial court found, that clearly satisfies the prong necessary for summary judgment for rescission based upon a fraud. Then, if we look at the alternatives as to materiality, there again you have a disjunctive. The disjunctive being would it adversely affect the insurer's determination to issue the policy? Here, and for good reason, we have the affidavit of the underwriter, Zachary Wong, that they would not have issued the policy. But of greater significance, we have the disjunctive that it materially and adversely affected the risk. A part of the misrepresentations were that the nature of the business of the applicant, Serenity LED, was the sale and drop shipment of LED light bulbs that the employees to be covered were clerical and sales. Then, on the other hand, we have the actual knowledge as established by the judicial admissions of the defendants and the affidavit of Bill Kay with attached exhibits that the actual business was the installation and repair of light fixtures. And at car dealerships, as everyone knows, those light fixtures are 15 or 20 feet in the air. We also have the representation that ladders and lifts were not used in the business. Whereas we know that they actually were because we even have a bid for work at Bill Kay, which includes a line item for lifts. Plus the fact for the Serenity LED installers to reach the fixtures. They had to get up there some way and ladders and lifts would be the alternatives. So, the policy was issued to a clerical business based upon representations affirmatively that that's the nature of the insured's business and the declination of risks such as installation, which involves physical labor. So, the policy was issued based upon misrepresentations, which were by their nature material, as were the risks being covered. The intriguing aspect of the argument, and I'm still trying to rattle this one around to see if I can get it to come out in a meaningful fashion at the bottom. In our brief, we set forth the fact that the Serenity and the SAS wholly misapprehend the nature of workers' compensation insurance. The statute says that the policies will be coextensive with the employers' workers' compensation obligations. And as the court is well aware, those obligations are to cover any accidental injury which arises out of and in the course of the employment, regardless of how they took place. So, in seeking coverage under the policy, Serenity LED obtained a workers' compensation policy, which if Christopher SAS sustained his injuries by pitching off a ladder while installing lights at a 20-foot level and broke every bone in his body, would have been covered under that policy. That's the reason for a rescission. We don't have a policy that contains exclusions, as is the case with most policies. Here we have the insuring agreement under the policy being that Hartford will promptly pay when due benefits required of you by the workers' compensation law. And let me point out here that Serenity LED is still liable to Christopher SAS on the workers' compensation claim, regardless of what he was doing. The only issue is whether Hartford has coverage under its workers' compensation policy for that. And we say it does not because this is as clear a case of number one, misrepresentations which are agreed. Number two, misrepresentations which were knowingly made, which is agreed. Number three, misrepresentations that were made to induce the issuance of the policy, which is circumstantially mandated, because why else would they be making any representations or responding to questions that were asked by the Hartford? SAS had to know that those questions were being asked so that they would understand the business and the risks and determine whether or not to issue the policy. Therefore, this is as clear-cut a case in favor of rescission under section 154 under all of its prongs as could conceivably be made or presented. We submit that the trial judge was correct in finding that these were intentional misrepresentations. And as this court is well aware, it may affirm on any grounds which are appropriate and therefore may affirm if the misrepresentations were material, either as to the acceptance of the risk. And Wong says that they were and the policy would not have been issued and there is no contradiction of that. Or number two, as to the magnitude and nature of the risks which were misrepresented. We submit, therefore, respectfully that the judgment below should be affirmed. All right. Thank you, Mr. Miller. Justice Bridges, do you have any questions of Mr. Miller? I do. Thank you. Mr. Miller, in your brief on page 21, you cite the Illinois Supreme Court gold and rule insurance case. And you point out that the misrepresentation that was explained in that case must be made with actual intent to deceive or materially affect the acceptance of risk. And assuming that's still the good law, aren't these issues a question of fact that would preclude the issuance of summary judgment? And no, not under circumstances such as this, where we know that it was a misrepresentation. And I guess we're beating around the bush. It was an out and out lie and known to be such as admitted by the defendants. If the court will recall procedurally here, we called the defendants to task for the ambiguity of their answer and the fact that it failed to comport with the requirements of the code of civil practice. And the judge agreed. Therefore, they were called upon to actually answer and admit or deny. And the admissions are that the misrepresentations were made with actual knowledge. And you can't have a misrepresentation that they're doing a certain type of work, which carries with it a perils, which a workers' compensation insurer would want to know. And did not agree that that was intentional for the purpose of obtaining a policy which might not have otherwise been issued or material in the setting of a risk, which is far greater and more material than clerical workers sitting in an office. I mean, these are, if we want to look at them circumstantially, if we want to look at them in the context of the content, a case outcomes and conclusions, which are compelled by the facts that we know. And also we have here and possibly the icing on the cake. It was the fact that the very work for which a Christopher Sass claims that he fell was the subject of a mechanics lien that was asserted by a serenity. And it contained the admission that the business in December was the installation of lights. So whatever he was doing out there had to do with the installation of lights. It is not. Well, let me get to Mr. Miller. Let me get to this question, because there's no evidence in the record before us that the defendant, Mr. Sass, was installing light or on a lift when he was injured. And does that fact that Mr. Constananza was the one who completed the application for the insurance raise a genuine issue as to whether Sass could be covered under the innocent insured doctrine? No, because we have the admissions that it was Serenity LED and the admission by Christopher Sass that he made the application. Constanza is not going to have any information that wasn't given to him by the insured Serenity LED and Christopher Sass, the owner. This is not going to be an innocent insured. Plus the fact that we have the ISBA case that says against the law firm dealing with the coverage where there were misrepresentations and the partners in the firm said we didn't make them. And the court said that makes no difference because the policy was void of an issue based upon the misrepresentations that were in fact made rescission goes to the heart of the policy and goes to the heart of the policy at the time that the policy is issued. Thank you, Mr. Mueller. Thank you, Justice Hudson. I have no further questions. Thank you, Justice Bridges. Justice Brennan. Do you have any questions of Mr. Miller? Mr. Miller, you've recited the relevant case law, but based on your experience, if there was a policy in play, and there was an injury of an employee installing those LED lights on a pole. There's no argument that Hartford would have to cover it if that policy was in existence, notwithstanding any misrepresentations or anything else based on the Workers' Compensation Act. Well, based upon the Workers' Compensation Act, if there was no claim of rescission for misrepresentation and fraud, then that is true. But once Section 154 is triggered, as it was here, it goes to the policy at the time that it was issued and says that there was no policy. And if there was no policy, then even if this was not Christopher Sass, let's assume that this was Bob Jones who was up there working on a ladder and a lift and fell and was crunched. He would have a workers' compensation claim against Serenity LED, and he could recover from Serenity LED, but there wouldn't be any coverage for that if the policy was procured by fraud. Okay. Thank you very much. Mr. Miller, I have a question to you. It doesn't appear to be seriously contested that some misrepresentations were made regarding Serenity's work and that they were not simply suppliers. They also were in the process of installing the lights, as they were in this case. At least the contract with Bill Kaye was for that. The defendants come up with a somewhat novel argument. They seem to be saying, okay, even assuming we agree we made material misrepresentations, Mr. Sass, our employee, was not hurt doing installation work. He was merely walking across a parking lot. So since it didn't happen as a result of installation work, we should be able to still follow them covered. So how do you respond to that argument that he fell when he wasn't doing installation work? Very simply, it makes absolutely no difference what he was doing. He could have been sitting at his desk when the ceiling collapsed. The policy doesn't exist because it was procured by fraud. That is the nature of a rescission. You can't say that, well, some risks are excluded under this policy because we misrepresented A, B, C, and D. But this is risk E, which is not in the line of those that were misrepresented, and therefore you have issued a policy which covers that risk. No risks are covered under a policy that is rescinded. And we set forth the cases in our brief that say it makes no difference. Assume it's a health insurance policy and you misrepresent whether you have cancer and then subsequently break your leg. The argument is, well, this wasn't cancer. The response is that the policy is void of initio for any risks. You're not going to parse the coverage because as here the coverage has to be coextensive with the employer's exposure under the worker's compact, which is for any accidental injuries arising out of or in the course of the employment. All right. Thank you very much, Mr. Miller. All right. At this time, Mr. Donahue, we turn back to you for your argument. Okay. Just very quickly, you know, I mean, it's the court has all the pleadings, all the admissions by the defendants in this case, but I don't think that it changes the fact that the record indicates that any installation work was going to be done by subcontractors. And that that was in response to the inquiry to verify when my clients asked for an estimate for the coverage. Now, as I said, going back, not to belabor the point, but the policy itself on 862 in the record says that subcontractors are not part of the schedule and the statute for the workers compact definition of employer provides a safe harbor when an employer uses subcontractors and does not have to provide coverage for those people. So I would at the risk of starting an argument personally with Mr. Miller, I think that those three aspects do demonstrate that it's not completely unitary and it's not completely coextensive because the legislature set forth certain instances where that rule does not apply. And I'm not suggesting that the exception be applied globally going forward from this day forward. I'm saying that in this instance, in this case of Hartford versus serenity, the exceptions apply. And I think that 154 clearly says that no misrepresentation will avoid coverage unless it's made with actual intent to deceive or it materially affects the risk. And a judge Hoffman found in his ruling that there was a fraudulent misrepresentation and that he did not have to go to the issue of materiality because it wasn't disjunctive. And I stand that with all that being said, there is a bifurcation, if you will, of the incidents because of a slip and fall on a sales call. And with the exclusions that I just mentioned, the exceptions, together with the known risk doctrine that Hartford was never at jeopardy for an installation claim. And this is a claim where Mr. Sass suffered some serious injuries to the point where Hartford even paid some temporary disability benefits and then yanked them back and then rescinded the contract and canceled it. And gave a reason for canceling the contract that didn't say anything about misrepresentations. It said, it's on page 898, I believe, of the record. And it gave, it's a cancellation of the policy and it said, I'm paraphrasing because I don't have it in front of me at the moment and I don't want to waste the court's time. You can certainly look at it exactly, but it says, in effect, we're canceling your policy because you no longer meet our underwriting guidelines because you are installing installation heights of street and lighting, highway and street lighting work. When they clearly, Serenity and Sass, clearly answered that question in Hartford's inquiry in the negative in March. No, we're not doing street lighting and installation work. And then it said, heights above 30 feet. Yes, by subcontractors who are excluded from this policy from the get-go. So our position still is there's a genuine issue of material fact here as to whether the court properly entered summary judgment on this case. Because the exceptions apply in this case only, not globally, and the case should go to trial so that we can actually give the court the opportunity to explore the credibility of the witnesses in open court. Some cross-examination, not for affidavits, one of which was made two years after the accident in support of the second motion for summary judgment. Which clearly had the benefit of all the prior knowledge and, of course, can make self-serving statements of, had I known then what I know now, I wouldn't issue the policy. So, with that, I thank you for your time. Thank you. Justice Bridges, do you have any questions of Mr. Donahue? I do not, thank you. Justice Brennan, do you have any questions? I do not, thank you. I do have one question, Mr. Donahue. Yes, sir. About the analogy that Mr. Miller raised. You're saying, obviously, that since Sass did not get injured doing any installation work, he's simply taken a stall across the parking lot. Then there should be coverage there, but what about his analogy that in a health insurance application, is it your position that if they ask if you're suffering from cancer and you say no, it turns out you have diabetes and you make a claim later, your argument is it doesn't matter that there was a material misrepresentation because it didn't go to the particular risk that gave rise to the injury. Is that your position, and why isn't Mr. Miller's analogy accurate? No, that's not my position. My position is the exceptions available in the two statutes and the known risk doctrine apply in this case. So, what's the exception you're referring to that allows you to fall within coverage? Section 154, there's been no evidence of actual intent to deceive, and it's a disjunctive, it's or, so materiality was not addressed by Judge Hoffman. We had to do a bystanders report because I did not have a court reporter, but Judge Hoffman said, because I find, and words to the effect of paraphrasing him, because I find that there was fraudulent misrepresentations, I don't need to get to the materiality. So, there's nothing, he didn't even address whether or not it adversely affected the risk because he found that it was fraudulent. And therefore, this exception, I think we need to go back and have a trial to explore beyond affidavits and get real testimony subject to cross-examination of the witnesses. Written in this disjunctive, do you need to have both? Isn't the statute written as an either or? Yes, it is. And what I'm saying is, is that there's no evidence of actual intent to deceive. But how do you characterize, the question says, is the company doing any installation work at all? And Mr. Seth says no, and yet they are and they have a contract. How is that not intent to deceive? I think we need to explore it. You're going to his state of mind, and respectfully, I don't, I can't read his state of mind. Okay, are there any further questions of Mr. Donahue? No, thank you. That'll formally conclude the proceedings here this morning. On behalf of all the panel members, I want to thank Mr. Donahue and Mr. Miller for the quality of their arguments here this morning. The matter will, of course, be taken under advisement and a written disposition will issue in due course. Thank you all very much. Thank you, Your Honors.